**CASE NO. 23-10922**

_____

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

_____

**SYDNEY I. SILVERMAN,**

Defendant-Appellant,

vs.

**SAM'S WEST, INC.,**

Plaintiff-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

No. 18-cv-63162

_____

**APPELLANT'S OPENING BRIEF**
_____

**Scott A. Wagner**
**WAGNER LEGAL**
3050 Biscayne Blvd., #701
Miami, FL 33137
Telephone: (305) 768-9247

Attorney for Appellant
Sydney I. Silverman

**NO. 23-10922**
**Sam's West, Inc. v. Silverman**

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to 11th Cir. R. 26.1, Fed. R. App. P., and 11th Cir. R. 26.1-1 and 11th

Cir. R. 27-1(a)(5), Appellant, Sydney I. Silverman, certifies that the following

persons and entities may have an interest in the outcome of this case:

1. Askew, Jess - Attorney for Appellee

2. Cohn, James I. – U.S. District Court Judge

3. Silverman, Sydney I. - Appellant

4. Strauss, Jared M. – U.S. Magistrate Judge

5. Suggs, Caleb - Attorney for Appellee

6. Sam's West, Inc., Appellee

7. Wagner, Scott A. - Counsel to Appellant

## <u>STATEMENT REGARDING ORAL ARUGMENT</u>

Because "oral argument is the absolutely indispensable ingredient of appellate advocacy" Appellants request oral argument because it will assist the Court in a resolution of the issues presented by this appeal. (J. Brennan, Harvard Law School Occasional Pamphlet, Number Nine 22-3 (1967)).

# Table Of Contents

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement .............C-1
Statement Regarding Oral Argument ...................................................... i
Table of Contents ........................................................................... ii
Table of Citations ......................................................................... iii
Jurisdictional Statement.....................................................................ix

I.    Statement of the Issues ......................................................... 1
II.   Statement of the Case ........................................................... 2
      a.  Nature of the Case............................................................ 2
      b.  Statement of Facts............................................................ 3
           i.  Veil Piercing.............................................................. 3
          ii.  Failure to State a Claim............................................... 8
III.  Summary of the Argument ....................................................... 12
IV.   Argument.......................................................................... 14
      a.  Standard of Review............................................................14
      b.  Law Applied...................................................................15
      c.  Analysis......................................................................15
           i.  Veil Piercing Improper...................................................15
               1.  Summary Judgment Improper.............................................15
               2.  State of Mind for the Jury.............................................23
               3.  Improper Conduct Standards............................................27
          ii.  Amended Third Party Complaint Fails to State Claim..........33
V.    Conclusion........................................................................40

Certificate Of Compliance..................................................................43
Certificate Of Service.....................................................................43

## <u>TABLE OF CITATIONS</u>

<u>**Cases**</u>                                                                                      <u>**Page(s)**</u>

*Ally v. Naim*,
 581 So. 2d 961, 962-63 (Fla. 3d DCA 1991)………………….....……… 31

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)……….…….14

*Arch Specialty Ins. Co. v. Bp Inv.*,
 No. 6:18-cv-1149-Orl-78DCI, 2020
 U.S. Dist. LEXIS 129107, at *7 (M.D. Fla. July 17, 2020)………………. 25

*Ashcroft v. Iqbal*,
 556 U.S. 662, 678 (2009))..………………….….………………………… 39

*Bacon & Bacon Mfg. Co. Inc. v. Bonsey Partn*ers,
 62 So. 3d 1285 (Fla Dist. Ct. App. 2011)………………………………… 32

*Beach Cmty. Bank v. Cannon (In re Cannon)*,
 27 Fla. L. Weekly Fed. B91 (U.S. Bankr. N.D. Fla 2017) ………...………29

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544, 570 (2007)……………………………….…………….. 39

*Braswell v. ConAgra, Inc.*,
 936 F.2d 1169, 1174 (11th Cir.1991)……………………..…………..27

*Brooks v. United States*,
 837 F.2d 958, 965 (11th Cir. 1988) …………………………..……………23

*Bruno v. Destiny Transp., Inc.*,
 921 So. 2d 836 (Fla. 2d DCA 2006) ……………………………………24

*Bryan v. Jones*,
 530 F.2d 1210, 1218 (5th Cir. 1976)…………………………..……... 23

*Burton v. Linotype Co.*,
    556 So. 2d at 1129-30 …………………………………………………… 32

*Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*,
    942 F.3d 1215, 1229 (11th Cir. 2019)…………………………………………38

*Carlson v. FedEx Ground Package Sys., Inc.*,
    787 F.3d 1313 (11th Cir. 2015)………………………………………… 15

*Casamassina v. United States Life Ins. Co.*,
    958 So. 2d 1093, 1100 (Fla. 2007) )…………………………………….24

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 322-23 (1986) )……………………………………….14

*Century Properties, Inc. v. Machtinger*,
    448 So. 2d 570 (Fla. Dist. Ct. App. 1984)…………………….………32

*Chanel, Inc. v. Italian Activewear of Fla., Inc.*,
    931 F.2d 1472, 1476 (11th Cir. 1991) )…………………………………… 23

*Chavis v. Clayton County School District*,
    300 F.3d 1288, 1291 n. 4 (11th Cir. 2002)…….……………………………37

*Chew v. Gates*,
    27 F.3d 1432, 1440 (9th Cir. 1994)…………………………..…………… 24

*Cisneros v. Petland, Inc.*,
    972 F.3d 1204, 1210 (11th Cir. 2020) …………………………..…………39

*Coastal Investment Properties, Ltd. v. Weber Holdings, LLC*,
    930 So. 2d 833, 834 (Fla. Dist. Ct. App. 2006)…………………………… 32

*Cohen v. Kravit Estate Buyers, Inc.*,
    843 So. 2d 989, 991 (Fla. 4th DCA 2003) …………………………..24, 32

*Crawford v. Carroll*,
    529 F.3d 961, 975-76 (11th Cir. 2008) )…………………………………26

*Denney v. City of Albany*,
    247 F.3d 1172, 1182 (11th Cir. 2001) )…………………………………… 26

*Elder v. Cardoso,*
    205 Ga. App. 144, 147, 421 S.E.2d 753, 756 (1992)……………………..27

*Erie R.R. Co. v. Tompkins,*
    304 U.S. 64, 58 (1938)……………………………………………………15

*FindWhat Investor Group v. FINDWHAT.COM,*
    658 F.3d 1282 at 1307 (11th Cir. 2011)………………………………..14-15

*Fiveash v. Allstate Ins. Co.,*
    603 F. App'x 773, 776 (11th Cir. 2015) …………………………………25

*Flooring Depot FTL, Inc. v. Wurtzebach,*
    330 So. 3d 47, 49-50 (Fla. 4th DCA 2021)..………………………………31

*Gasparini v. Pordomingo,*
    972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) …………………………27, 31

*Ganstine v. Sec'y,*
    502 F. App'x. 905, 909-10 (11th Cir. 2012) ……………..………………37

*Gilmour v. Gates, McDonald & Co.,*
    382 F.3d 1312, 1315 (11th Cir. 2004) …………………………………… 37

*GIW Indus. v. JerPeg Contracting, Inc.,*
    530 F. Supp. 2d 1323, 1336-37 (S.D. Ga. 2008)…………….………….25

*Goodman v. Safeco Ins. of Ill.,*
    No. 8:13-cv-2641-T-30EAJ, 2014 U.S. Dist. LEXIS 138764,
    2014 WL 5080247, at *3 (M.D. Fla. Sept. 30,2014) ……………………..24

*Haiman v. Fed. Ins.* Co.,
    798 So. 2d 811, 811-12 (Fla. 4th DCA 2001)………… ………………… 25

*Hagerty v. L & L Marine Services, Inc.,*
    788 F.2d 315, 318 (5th Cir. 1986) …………………………………… 23

*Hammer v. Slater*,
20 F.3d 1137, 1143 (11th Cir. 1994). …………………………….……27

*Horowitch v. Diamond Aircraft Indus., Inc.*,
645 F.3d 1254, 1257 (11th Cir. 2011) …………………………………15

*Illusions of the S., Inc. v. City of Valdosta*,
Civil Action No. 7:07-cv-6 (HL),
2009 U.S. Dist. LEXIS 62198, at *12 (M.D. Ga. July 21, 2009)………..26

*In re Hillsborough Holdings Corp.*,
176 B.R. 223, 244-45 (M.D. Fla. 1994)…………………..12, 27, 29, 31, 32

*In re Jennings*,
533 F.3d 1333, 1339 (11th Cir. 2008). ………………………………..26

*James Talcott, Inc. v. Jack Cole Co.*,
441 F.2d 325, 329 (5th Cir. 1971) ……………………………………… 23

*Joe's Stone Crab, Inc. v. EEOC*,
220 F.3d at 1286 (11th Cir. 2000) ………………………………………..26

*Kidd v. Coates*,
271 Ga. 33, 518 S.E.2d 124 (1999) ………………………………………..26

*King v. Masson,*
148 Ga. App. 229, 231, 251 S.E.2d 107, 108 (1978)……………………..27

*Kragor v. Takeda Pharm. Am., Inc.*,
702 F.3d 1304, 1307 (11th Cir. 2012)…………………………………… 14

*Lopes v. Allstate Indem. Co.*,
873 So. 2d 344, 347 (Fla. 3d DCA 2004) …………………………………25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)…………... 22

*Mize v. Jefferson City Bd. of Educ.*,
93 F.3d 739, 742 (11th Cir. 1996)…………………………………………19

*Morissette v. United States*,
    342 U.S. 246, 274, 72 S. Ct. 240, 255, 96 L. Ed. 288 (1952)……………..23

*Moorman v. UnumProvident Corp.*,
    464 F.3d 1260, 1266 n.1 (11th Cir. 2006)………………………………..18

*Nicholas v. Nationwide Credit, Inc.*,
    2010 U.S. Dist. LEXIS 10442, at *13 (S.D. Fla. Feb. 8, 2010). …………26

*Pinkerton & Laws Co. v. Roadway Express*, Inc.,
    650 F. Supp. 1138, 1148 (N.D. Ga. 1986) ………………………………..25

*Reeves v. C.H. Robinson Worldwide, Inc.*,
    594 F.3d 798, 813 (11th Cir. 2010). ………………………………………26

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133, 150-51, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000)….18

*Robertson-Ceco Corp. v. Cornelius*,
    2007 U.S. Dist. LEXIS 23762, at *23-24 (N.D. Fla. Mar. 30, 2007) ……..29

*Ruiz v. Safeco Ins. Co. of Ill.*,
    2019 U.S. Dist. LEXIS 111881, at *7-8 (S.D. Fla. Mar. 18, 2019)……….. 25

*Seminole Boatyard, Inc. v. Christoph*,
    715 So. 2d 987, 990 (Fla. 4th DCA 1998) ……………………………27, 31

*Speedway Grading Corp. v. Gardner*,
    206 Ga. App. 439, 441, 425 S.E.2d 676, 678 (1992)………………………27

*S.R.R. v. Life Inv'rs Ins. Co. of Am.*,
    2010 U.S. Dist. LEXIS 23815, at *7-8 (M.D. Fla. Jan. 28, 2010)…………24

*Stephens v. Mid-Continent Cas. Co.*,
    749 F.3d 1318, 1321 (11th Cir. 2014)………………………………………14

*Tims v. LGE Cmty. Credit Union*,
    935 F.3d 1228, 1236 (11th Cir. 2019)………………………………………38

*U-Haul Intern., Inc. v. Jartran, Inc.*,

793 F.2d 1034, 1043 (9th Cir. 1986) …………………………...……………..32

*United States v. Freyre-Lazaro,*
3 F.3d 1496, 1503 (11th Cir. 1993), …………………………………………..27

*United States v. Greer,*
850 F.2d 1447, 1452 n. 8 (11th Cir.1988) …………………………………...27

*United States v. Gregory*,
730 F.2d 692, 702 (11th Cir. 1984)…………………………………………23

*United States v. Hussaini,*
2022 U.S. Dist. LEXIS 7328, at *20-21 (S.D. Fla. 2022) ……………..…24

*U.S. Life Ins. Co. In City of New York*,
958 So. 2d 1093, 1101 (Fla. 4th DCA 2007) ……………………………24

## Rules and Treatises

FED R. CIV. P. 56(a) …………………………………………………………14

Wright & Miller, Federal Practice & Procedure § 1385 (3d ed. 2020)…………. 37

## <u>STATEMENT OF JURISDICTION</u>

Pursuant to 28 U.S.C. § 1332, the District Court had original jurisdiction over the action by reason of diversity of citizenship, in that it is a civil action wherein the amount in controversy exceeded the sum or value of $75,000.00, exclusive of interest and costs, and was between citizens of different States. The District Court also had supplemental jurisdiction over the action pursuant to 28 U.S.C. § 1367 because the claims raised were related to the claims in the underlying lawsuit that they form part of the same case or controversy.

Appellant, Sydney I. Silverman, seeks appellate review from Summary Judgment against him. An Amended Final Judgment entered against Mr. Silverman on January 31, 2023 [Doc 218], per the order entered into the Record on January 31, 2023 [Doc 217] Adopting Report of Magistrate Judge Report and Recommendations on the Motions for Summary Judgment [Doc 213]. Appellant timely filed his Notice of Appeal on March 2, 2023. [Doc 222].

28 U.S.C.S. § 1291 grants the federal courts of appeals jurisdiction to review all final decisions of the district courts. *United States v. Gulledge*, 739 F.2d 582, 583 (11th Cir. 1984).

# I.    STATEMENT OF THE ISSUES

(1) Whether the District Court erred in granting summary judgment in favor of Sam's West, Inc. and against Mr. Silverman by making a fact determination as to Mr. Silverman's state of mind (negligent or reckless versus intentional) under Florida's corporate veil piercing laws, which require that the actions of Mr. Silverman be intentionally designed to defraud Sam's West, Inc., as opposed to merely being negligent or reckless; Appellant Silverman contends that the record facts of this case create a genuine issue of material fact as to his state of mind and therefore, summary judgment was improper because his state of mind should be a question of fact submitted to a jury for determination.

(2) Whether the Court erred in denying Silverman's Motion for Summary Judgment and dismissing Sam's West, Inc.'s Third Party Complaint for failure to state a claim upon which relief could be granted.

# II.    STATEMENT OF THE CASE

## A. Nature of the Case

This matter arises from a Third-Party Complaint filed by Appellee Sam's West, Inc. against Appellant Sydney I. Silverman. Doc 148. The Third-Party Complaint was filed after the District Court initially found that Sam's West, Inc. was entitled to recover monies against Mr. Silverman's company, W.P. Productions,

arising out of a deferred account receivable from W.P. Productions, Inc.  Doc 105, Doc 120.

The Third-Party Complaint brought by Sam's West, Inc. sought to pierce the corporate veil of W.P. Productions, Inc. so it could collect its judgments against Mr. Silverman personally.  Doc 148, Counts I and II. Mr. Silverman defends that he did not engage in the kind of activities that would rise to the level required under Florida law to allow Sam's West, Inc. to pierce the corporate veil.  Doc 151. The parties filed cross-motions for summary judgment against one another Docs 188-191, 194-197, 200, 201, 204, which were referred to the Magistrate Judge, who issued his Report & Recommendations for the entry of summary judgment against Mr. Silverman and in favor of Sam's West. Doc 210. Mr. Silverman timely objected to the Magistrate's Report & Recommendations. Doc 213. The District Court Judge adopted the Report & Recommendations and ultimately entered summary judgment in favor of Sam's West, Inc. Doc 217.

Mr. Silverman appeals to this Honorable Court for review of those Orders and Amended Judgments and argues that the District Court improperly invaded the sacred province of the jury for a finding of fact related to Mr. Silverman's state of mind and that in any respect, Sam's West, Inc. failed to file a claim upon which relief could be granted.

## B. Statement of the Facts

### i.    As Relates to Corporate Veil Piercing Efforts

1.    Sydney Silverman is 80 years old; he was the founder, President and sole shareholder of W.P. Productions, Inc. *See* Doc 191-1, ¶1.

2.    W.P. Productions, Inc. was founded on December 27, 1994. *Id.,* ¶ 2.

3.    For nearly one quarter of a century, W.P. Productions procured the manufacture of licensed and branded cookware sets that were sold to many retail customers and wholesale vendors, including Sam's West, Inc. *Id.,* ¶ 3.

4.    As the sole shareholder, Mr. Silverman was entitled to all profits from W.P. Productions, Inc. *Id.,* ¶ 4.

5.    W.P. Productions, Inc. was a small company, operating with a handful of employees including its CFO, Mr. Arnold Simon, who passed away a few years ago, and who performed internal accounting for the business. *Id.,* ¶ 5.

6.    At the end of each year, the corporate profits left over were due to Mr. Silverman. *Id.,* ¶ 6.

7.    Each year, Mr. Silverman's profits that were left in the corporate account at year end, were declared by Mr. Silverman as part of his income, as shown on all tax returns. *Id.,* ¶ 7.

8.    Mr. Silverman testified that he paid income tax on all of those W.P. profits due him and that in his view those funds were Mr. Silverman's funds, not W.P. funds. *Id.,* ¶ 8.

9.    To avoid any issues with a potential shortfall in the upcoming years that could trigger Mr. Silverman funding monies into the corporate account, all of Mr. Silverman's personal funds were left in the corporate bank account on advice of his CFO, Mr. Arnold "Arnie" Simon. *Id.,* ¶ 9.

10.    This arrangement commenced and proceeded many years prior to the start of any business relationship with Sam's West, Inc. In fact, the record contains evidence of this arrangement in the form of a scorecard showing a ledger of funds that were denominated personal funds of Mr. Silverman over the years. This "scorecard" evidenced what was left over in the account that were personal Silverman funds, as they accrued from year to year, so W.P., Simon and Silverman knew which were Silverman funds and which were earmarked as W.P. corporate funds. *Id.,* ¶ 10.; *also see* Doc 196 and 196-2.

11.    This occurred as far back as year 2 of the company and continued all the way throughout the course of the operations of the company, for nearly two decades. *Id.,* ¶ 11.

12.    Those profits leftover were understood by all to be Mr. Silverman's personal funds, for which Mr. Silverman already paid tax, and all agreed that Mr.

Silverman's funds were allowed and were indeed drawn upon by Mr. Silverman which would reduce the amount he was owed on the scorecard; the arrangement made was that even though these funds were left in the W.P. Productions, Inc. bank account, all understood and agreed they did not belong to W.P. Productions, Inc. *Id., ¶* 12.

13.    From time to time, Mr. Silverman would make charges to credit cards; some of those charges were business expenses which were reimbursed from funds that were corporate funds and not from my profits in the bank, and other charges were personal, which were paid from the portions of funds in the W.P. bank account that were Mr. Silverman funds., not corporate monies of the company, and reduced amounts on the ledger that were Silverman's per the scorecard. *Id., ¶* 13.

14.    This continued for nearly two decades, well before any relationship commenced with Sam's Club. *Id., ¶* 14.

15.    At no point were Mr. Silverman personal charges paid for out of W.P. corporate funds even though they remained in the same bank account from time to time; rather, they were paid out of Mr. Silverman money that happened to remain in a W.P. bank account, but was not corporate monies, per the arrangement of all involved. *Id., ¶* 15.

16.     During the course of the W.P. business relationship with Sam's Club, W.P. came to owe Sam's certain moneys that were due in account receivables. *Id.,* ¶ 16.

17.     Sam's agreed to receive deferred payments in installments over time. *Id.,* ¶ 17.

18.     W.P. entered into a promissory note to repay. *Id.,* ¶ 18.

19.     W.P. made certain payments on that installment program. *Id.,* ¶ 19.

20.     At the time, W.P. intended and expected to repay Sam's based on revenues earned from future orders of Sam's. *Id.,* ¶ 20.

21.     Prior to entering into this arrangement and also thereafter, Sam's never performed any due diligence on the accounting practices at W.P. Productions as a condition of the deferred installment plan, never asked about the corporate health and never asked for a single document in due diligence. At no point were Mr. Silverman funds represented to Sam's as corporate funds for any reason, including to induce them into the repayment program Sam's proposed. *Id.,* ¶ 21.

22.     Mr. Silverman further testified that at no time was there ever any intent not to pay Sam's and certainly there was no intent to defraud Sam's whatsoever. *Id.,* ¶ 22.

23.     Over the course of time, Mr. Silverman continued to act as he always had since the beginning of the business and continued to make credit card charges

and have certain monies sent from W.P. accounts, but these funds were Mr. Silverman personal funds due and earned by Mr. Silverman; they were not W.P. monies. *Id.,* ¶ 23.

24.    At no point did Sam's ever ask for any creditworthiness or due diligence from W.P. when it entered into the payment installment plan for accounts receivables due. *Id.,* ¶ 24.

25.    In fact, Sam's never made one inquiry into the financial condition of W.P., did not require a personal guaranty from anyone including Mr. Silverman, and was not misled in any way, shape, or form. *Id.,* ¶ 25.

26.    Rather, W.P. told Sam's that W.P. was going to repay Sam's based on future orders placed with W.P. *Id.,* ¶ 26.

27.    However, in 2016, after W.P. part performed on the installment payments, Sam's stopped placing orders and W.P.'s business ground to a halt with Sam's.  *Id.,* ¶ 27.

28.    This caused W.P. revenue to decrease and actual corporate funds to be unavailable for payment of the outstanding invoices. *Id.,* ¶ 28.

29.    This did not change the fact that certain monies on account, which Mr. Silverman always understood were his funds and for which Mr. Silverman paid tax on remained Mr. Silverman monies, whereas W.P. funds on account became lower. *Id.,* ¶ 29.

30.    The real cause of any injury to Sam's Club was the fact that they ceased ordering product from W.P. *Id.,* ¶ 30.

31.    Mr. Silverman testified that while he used his personal funds on account as he always had in the course of the past two decades, it never entered his mind that use of those funds was designed to somehow intentionally defraud Sam's, that he never any intent to nor did Mr. Silverman or anyone else ever defraud Sam's into a payment installment plan with no intention to pay Sam's. *Id.,* ¶ 31.

32.    W.P. fully intended to pay the payment installments when due with its funds, but in the operation of the business, it became unable to do so. *Id.,* ¶ 32.

ii.    <u>As Relates to Failure to State a Claim</u>

33.    Sam's looks to hold Mr. Silverman personally responsible for the more than 2.7 million dollars in judgments it obtained for W.P. failure to make payment installments on an account receivables plan. Doc 148.

34.    Sam's initially filed its one count Supplemental Complaint against Sydney Silverman personally in May 2021. Doc 140.

35.    The single count was a cause of action for collateral estoppel, asking this Court to import offensively the finding alter ego status made under California law in a separate action not involving Sam's to preclude all Silverman defenses and automatically add him as a judgment debtor, personally, to the judgments. *Id.*, at ¶52-60.

36.    On June 16, 2021, Mr. Silverman answered the Complaint and asserted Affirmative Defenses. Doc 144

37.    In his Affirmative Defenses, Mr. Silverman defended that collateral estoppel was not a cause of action, that in any event it did not apply in this matter, and that a finding of alter ego was not legally sufficient under Florida law to pierce the corporate veil in Florida, so therefore Sam's failed to set forth a claim upon which relief could be granted, as there is no cause of action for alter ego in the State of Florida. *Id.*

38.    Sam's was therefore on notice of this issue and fatal pleading defect as of June 16, 2021. *Id.*

39.    The Court also set a Status Conference Regarding the proceedings for July 2, 2021. Doc 145.

40.    During the hearing after Mr. Silverman raised the issue of Florida law, the Court noted its concerns with the pleadings in the event the California collateral estoppel efforts failed, and graciously afforded Sam's the opportunity to amend its Complaint, despite no prior request made by Sam's. Doc 146.

41.    On July 16, 2021, Sam's took advantage of that warning from the Court and filed its Amended Third-Party Complaint.  Doc 148.

42.    While Sam's expanded its complaint from one count to two, it did not cure the pleading deficiency (it was on notice of) in its amended filing.  *Id.*

43.    Instead, Sam's now brought two counts for declaratory relief – one to declare offensive collateral estoppel applied to enable a California holding to preclude Silverman from all defenses, and to automatically add Mr. Silverman as a judgment debtor and close the case, regardless of Florida law; and a second to seek declaratory relief finding merely that Mr. Silverman was, under Florida law, the alter-ego of W.P. Productions, Inc., without more – to wit: without alleging or seeking any finding or relief required to pierce the corporate veil under Florida law which requires more than a mere finding of alter-ego, but also a finding of intentional fraud as well as causation, items which appear nowhere in the relief sought therein. *Id.*

44.    Again, Mr. Silverman filed an Answer and Affirmative Defenses and again Mr. Silverman pled that the Plaintiff failed to state a claim upon which relief could be granted because alter-ego was an incomplete and therefore insufficient request for relief as a matter of law. Doc 151.

45.    Despite being on repeated notice from Mr. Silverman as well as the Court, Sam's failed to request any opportunity to amend its deficient pleadings, leaving Count II, wholly insufficient to provide the relief needs in order to add Mr. Silverman, personally, as a judgment debtor.  *See* Docket.

46.    Then, the parties engaged in substantial briefing – per the schedule ordered by the Court – in order to handle the issue of collateral estoppel in Count I

which alleged that Silverman was completely without the ability to defend himself from addition as a judgment debtor to the Sam's judgments.  Docs 149, 150, 152, 157, and 158.

47.    The Court scheduled and held a lengthy and substantive oral argument on October 14, 2021 Doc 163.

48.    The Court issued an order requiring supplemental briefing Doc 162 which was filed in this Court at Doc 166 and 169.

49.    The Court then issued its Report & Recommendations Doc 170 adopted over objection Doc 171 at Doc 172 on February 9, 2022.

50.    The Court granted the only relief at issue in this case, finding that "the California court clearly found that Judgment Debtor is an alter ego of Silverman," and as such due to the analysis therein Doc 170, Pg. 10-12, "Silverman should be prohibited from relitigating the issue of whether he 'dominated and controlled Judgment Debtor to such an extent that the corporation's independent existence, was in fact non-existent and Silverman was in fact the alter ego of the corporation.'".

51.    As such, by the Magistrate's December 15, 2021, Report & Recommendations, Doc 170, (adopted February 9, 2022, at Doc 172 by Judge Cohn), the issue of alter-ego was resolved, and Silverman was precluded from defending against the issue of alter-ego.

52.     The Report & Recommendations went further however, and instructed the parties that a determination of alter-ego was legally insufficient to pierce the corporate veil in Florida.

53.     Two weeks later, on February 23, 2022, following another hearing and status conference set by the Court Doc 174, the Court issued another Scheduling Order, affording Sam's yet another opportunity to amend its already Amended Complaint by April 8, 2022. Doc 177.

54.     Despite all the warning signals regarding its deficient pleadings, Sam's failed to do so. See Docket.

### III.   <u>SUMMARY OF THE ARGUMENT</u>

On the first issue before this Court, under Florida's corporate veil piercing laws, the type of improper conduct required to pierce the corporate veil is a term of art that is different and unique from what may be merely improper under other circumstances. Improper conduct under Florida's veil piercing law must be "deliberate misconduct" ***<u>intentionally designed to harm the creditor</u>*** and "negligence or even reckless conduct" -- improper as it may be -- is insufficient to rise to the level of the type of improper conduct required to pierce the corporate veil under Florida law. *In re Hillsborough Holdings Corp.,* 176 B.R. 223, 244-45 (M.D. Fla. 1994). The District Court erred when it undertook a fact-finding role in deciding the state of mind of Mr. Silverman and decided the activity  was tantamount to

deliberate misconduct intentionally designed to harm the creditor Sam's West, Inc. even though the record evidence could lead a reasonable juror to find that the behavior was negligent or even reckless, which would dictate a finding in favor of Mr. Silverman, not Sam's West, Inc. On the record facts before this Court, a reasonable juror could find Mr. Silverman's actions to be negligent or even reckless, but not intentionally designed to specifically defraud Sam's West, Inc. and therefore summary judgment is improper. Mr. Silverman requests the Court reverse the finding of summary judgment and on this point alone, send the case back to the District Court for trial before a jury.

Regardless, on the second issue before this Court, Sam's West, Inc.'s pleadings fail to state a cause of action upon which relief can be granted. The operative pleading – its Amended Third-Party Complaint is a two-count complaint. The first count sought collateral estoppel to import a California ruling under California law into this Florida proceeding to summarily hold Mr. Silverman personally liable for the debts of W.P. Productions, Inc. The District Court properly denied the claim. The second count as pled was to merely seek declaratory relief that Mr. Silverman was the alter-ego of W.P. Productions, Inc., without pleading the required cause of action to pierce the corporate veil under Florida law. In Florida, a finding of declaring an individual the alter-ego of a company is only part of the necessary elements required. Because Sam's West, Inc.'s Amended Third Party

Complaint fails to state a claim on Count II under which relief can be granted, this Court should reverse the Order of Summary Judgment and entered judgment in favor of Mr. Silverman, as a matter of law.

## IV.   <u>ARGUMENT</u>

### A. <u>Standard of Review</u>

This Court of Appeals reviews a district court's grant of summary judgment *de novo*. *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014) (citing *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1307 (11th Cir. 2012)). Summary judgment is appropriate only when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law. *Id*.; see also FED R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial burden of demonstrating the absence of a genuine issue of disputed fact. 658 F.3d at 1307 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Id*. (quoting *Anderson v. Liberty Lobby*). On review of a summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party, drawing all inferences in that party's favor.

*FindWhat Investor Group v. FINDWHAT.COM*, 658 F.3d 1282 at 1307 (11ᵗʰ Cir. 2011). This Court may not weigh conflicting evidence or make credibility determinations. *Id*. If genuine issues of disputed fact exist, the summary judgment must be reversed. *Id*. See also *Carlson v. FedEx Ground Package Sys., Inc.,* 787 F.3d 1313 (11th Cir. 2015) (reversing summary judgment, where the inferences to be drawn from the facts were not undisputed)

### B. <u>Law Applied</u>

"As a federal court sitting in diversity jurisdiction, (this Court will) apply the substantive law of the forum state, in this case Florida, alongside federal procedural law." *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 (1938)).

### C. <u>Analysis</u>

#### i. <u>Veil Piercing Improper</u>

##### a. <u>Summary Judgment Improper</u>

In this case, based on the record facts, summary judgment is improper because a reasonable juror could find Mr. Silverman's actions were merely negligent or even reckless, but not intentionally designed to specifically defraud Sam's West, Inc. Because piercing the corporate veil under Florida law hinges on such a finding and because the record evidence in this case -- when viewed in a light most favorable to Mr. Silverman -- could result in a reasonable juror finding his actions were negligent

or reckless as opposed to intentionally designed to specifically defraud Sam's West, Inc., the case should be returned to the province of the jury, where the sacred fact finding mission rests.

Mr. Silverman concedes as true the fact that for two decades on advice of his CFO, he left profits due to him in the corporate accounts and that over time he used some of those funds to personal expenses. He acknowledges that his was not the best practice and that it was negligent or even reckless to do so, but the record, when viewed in a light most favorable to Mr. Silverman, also show that his actions were not intentionally designed to specifically defraud Sam's West, Inc. of a deferred payment on an account receivable that was in litigation.

In support of his case, Mr. Silverman described a set of circumstances that resulted in a negligent or reckless way of handling funds in the corporate account that ended up with Mr. Silverman engaged in a routine practice of moving funds around in this closely held business that was negligent or reckless, but not intentionally designed to specifically defraud Sam's West, Inc. Mr. Silverman, testified by way of Affidavit in support of his Motion for Summary Judgment and in Response to Sam's Motion for Summary Judgment.

Mr. Silverman described how a decades' old routine practice ended up with his use of what he perceived were his personal funds resting in a corporate account for personal expenses. Mr. Silverman owned a closely held small business in which

he was the sole shareholder. Mr. Silverman, upon advice of his in-house CFO who handled accounting decided early in the corporate history that Mr. Silverman's profits, for which he paid taxes upon, would remain in the corporate account as a fiscal security measure with the parties keeping a contemporaneous scorecard, noting which funds were personal for Mr. Silverman and which funds were corporate assets for the company, such that Mr. Silverman could take draws for personal expenses as necessary, depleting the amount of funds kept of the scorecard between the company and Mr. Silverman. This scorecard was not fiction of Mr. Silverman's recent imagination but was produced in the record to corroborate his testimony.

While this practice devised by Mr. Silverman and Mr. Simon was probably negligent or even reckless, it was in place for more than two decades and was how the company and Mr. Silverman operated routinely, effectively on a sort of autopilot for decades. This evidence, viewed most favorably to Mr. Silverman as it must at the summary judgment phase, shows Mr. Silverman possessed no intent to defraud Sam's in his actions, but instead were the result of a negligent or even reckless business practice in place for years.

Mr. Silverman's testimony does not simply say "the funds were mine" without more, but instead does state with enough specificity for defeating summary judgment exactly how the funds ended up in the corporate account and earmarked for him personally. He explains that he was the sole shareholder, he explains that the profits

that remained from a prior year were his, and that there was agreement that he did personally pay taxes on those funds but left them earmarked for himself in the corporate account with a scorecard generated to show what amounts were earmarked for him and which were corporate funds.

Based on the affidavit and the scorecard provided, the record evidence provides specific evidentiary context for a jury to reasonably assess whether Mr. Silverman's actions were negligent or reckless on the one hand or intentional deliberative efforts to defraud Sam's on the other. Silverman explains that the moneys used for personal expenses in the account were his funds because they were profits that he earned and paid taxes upon and that the contemporaneously kept scorecard evidenced the balances that were Silverman funds as opposed to corporate funds.

The Report & Recommendations and Order adopting the Report & Recommendations each made an evidentiary finding at the summary judgment phase as to his state of mind and/or to his credibility of his testimony. But at the summary judgment phase, any credibility determination rests with the jury, and should not be within the province of the Court. See *Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1266 n.1 (11th Cir. 2006), citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000). ("Credibility determinations at the summary judgment stage are impermissible.") Instead, the

Court should view the fact statements in the affidavit along with the scorecard and draw all evidence and inferences from said evidence in Mr. Silverman's favor. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Whether a jury ultimately decides to believe or not believe Mr. Silverman because he does not have decades' old tax returns to corroborate what is in the decades' old contemporaneously kept scorecard and his testimony supporting the same is a fact issue for the jury, not the judge on summary judgment. At the summary judgment phase, these facts on the record should be viewed in a light most favorable to Mr. Silverman. *Id.*

In this case that would at the very least mean that there is evidence to support that Mr. Silverman and his now deceased CFO Arnold Simon indeed kept records earmarking Silverman funds already earned in the corporate account from WP corporate funds. This scorecard actually corroborates Mr. Silverman's testimony. This fact would at the very least show a jury that – going back well before any relationship with Sam's – Mr. Silverman's mind set (even if error) was that those funds earmarked in the account as Silverman funds were his funds available for his personal use and could lead a reasonable fact finder to believe that -- while his actions may have been negligent or even reckless -- they were not intentionally designed to defraud Sam's, which is required for a corporate veil piercing finding under Florida law.

It is also important to further note that there is no evidence in the record that Sam's ever requested a balance sheet in due diligence of the payment plan afforded to WP (because Sam's did not as Silverman testified in his affidavit) and therefore there is no evidence that Mr. Silverman defrauded Sam's by providing an inflated balance sheet that contained what he contended were his funds and passed the aggregate together off as WP funds. If that were the case, there would be evidence of intent to defraud Sam's. But that did not occur here. Mr. Silverman has further testified in his affidavit that Sam's never requested any balance sheets or any due diligence in providing information to Sam's as a predicate of entering into the deferred payment plan. This is also important because it would allow a fact finder to reasonably conclude that merely keeping what he believed were his personal funds earmarked through the scorecard in a WP corporate account as negligent or even reckless, but not intentional.

Last, the timing of the contemporaneously kept scorecard is critical as well; the scorecard, corroborated by specific Silverman testimony in his affidavit, show (especially when viewed in a light most favorable to Mr. Silverman) that WP, through Simon and Silverman, created this scorecard in year two of the company, that the remaining evidence of the scorecard contained detailed entries as far back as 2007 and 2008, and that Sam's and WP did not enter into the claim transaction until 2015-2016. This is a critically important fact issue for a jury to consider because

it shows that the scorecard was not created as a result of the Sam's transaction (i.e., designed to defraud Sam's in some way), but was created years before any relationship with Sam's existed, let alone any deferred payment plan from Sam's was entered into by WP and Sam's.  The reason this is an important fact in the record is that it shows that there was no intent to create the scorecard as a subterfuge to the Sam's deferred payment plan; instead, it was created way before the relationship with Sam's even commenced and therefore, it could lead a reasonable fact finder to conclude that the scorecard earmarking of funds was a business practice that spanned well before the relationship with Sam's and therefore the practice of Mr. Silverman using the corporate account to house some of his personal money and pay personal expenses from what all viewed as his personal monies may have been negligent or even reckless, but was not intentionally and deliberately done to defraud Sam's. Certainly, had Silverman taken the funds due to him as profits out of the WP account and not housed them in the corporate account, and also stopped putting his own funds into the account, there would be no money available to fund the Sam's deferred payment plan at all and it would not be because he raided the corporate account of corporate revenues but past amounts due him personally.  The combination of the testimony in the affidavit coupled with the corroborating scorecard *kept at the time* lifts the evidence out of esoteric bald or speculative assertions and into the fact specific record and business evidence that a jury should be able to consider in order

to make a finding that Mr. Silverman's actions were possibly negligent or reckless, but not intentionally designed to specifically defraud Sam's West, Inc.    Mr. Silverman has done far more to show that there is more than just some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

Furthermore, the Court improperly conflated two issues with one another. On the one hand, the Court found that it was improper for Mr. Silverman to not follow corporate law upon dissolution and that, even though he did not know, his use of personal funds was not allowed as a matter of corporate law because in actuality they were corporate assets. But where it made the impermissible leap was making a fact determination as to his mindset when he engaged in that behavior.  Because under Florida law, a person could improperly commingle funds, use those corporate funds for personal use, fail to follow corporate law, and yet still be shielded from corporate veil piercing if a fact finder determines he or she was acting negligently or recklessly in that respect as opposed to acting with the intentional purpose of defrauding the claimant.  On this record, there are material facts that create a genuine dispute as to whether that improper conduct was merely negligent or reckless on the one hand, or intentionally designed to dupe Sam's on the other.  Mr. Silverman should have the opportunity to explain this to the jury and the jury should be entitled to decide whether his actions were more likely negligent or even reckless or whether they were

done with intent and purpose to cut out Sam's from collection. Viewed in a light most favorable to Mr. Silverman, a reasonable juror could find he was engaged in reckless behavior, which would protect him from becoming personally liable.

b.  State of Mind is a Question for the Jury

A party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial. *See Chanel, Inc. v. Italian Activewear of Fla., Inc*., 931 F.2d 1472, 1476 (11th Cir. 1991); *Morissette v. United States*, 342 U.S. 246, 274, 72 S. Ct. 240, 255, 96 L. Ed. 288 (1952); *United States v. Gregory*, 730 F.2d 692, 702 (11th Cir. 1984).

State of mind issues are long held fact issues for the province of the jury. Courts throughout this Circuit have held the same under a myriad of state of mind issues before courts.  "Questions of reasonableness and state of mind are proper questions for the jury and should not be decided on summary judgment." *Brooks v. United States*, 837 F.2d 958, 965 (11th Cir. 1988); ("The reasonableness of a defendant's actions was for the jury."); *Bryan v. Jones*, 530 F.2d 1210, 1218 (5th Cir. 1976) (Wisdom, J., concurring in part and dissenting in part) ("Reasonableness is basically a jury question; it is a concept that loses meaning when courts try to pin it down."); *James Talcott, Inc. v. Jack Cole Co.*, 441 F.2d 325, 329 (5th Cir. 1971) ("We hold, however, that, nonetheless, the question of reasonableness was for the jury."); *Hagerty v. L & L Marine Services, Inc.*, 788 F.2d 315, 318 (5th Cir. 1986) ("It

is for the jury to decide questions such as the existence, severity and reasonableness of the fear."); *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) ("Because questions of reasonableness are not well-suited to precise legal determination, the propriety of a particular use of force is generally an issue for the jury."). *United States v. Hussaini*, No. 19-60387-CR-ALTMAN, 2022 U.S. Dist. LEXIS 7328, at *20-21 (S.D. Fla. Jan. 13, 2022) "Like fraud cases, summary judgment is rarely proper in "knowledge and belief" cases because the issue usually "turns on the axis of the circumstances surrounding the complete transaction, including circumstantial evidence of intent and knowledge." *Casamassina v. United States Life Ins. Co*., 958 So. 2d 1093, 1100 (Fla. 2007) citing *Cohen v. Kravit Estate Buyers, Inc*., 843 So. 2d 989, 991 (Fla. 4th DCA 2003). "Conflicting inferences from the record about intent or understanding are best left for the jury and are not appropriate for summary judgment." *U.S. Life Ins. Co. In City of New York*, 958 So. 2d 1093, 1101 (Fla. 4th DCA 2007) quoting *Bruno v. Destiny Transp., Inc*., 921 So. 2d 836 (Fla. 2d DCA                                                                                           2006

*S.R.R. v. Life Inv'rs Ins. Co. of Am.*, No. 8:08-CV-960-T-17MAP, 2010 U.S. Dist. LEXIS 23815, at *7-8 (M.D. Fla. Jan. 28, 2010). Whether the insured possessed the intent to defraud and made material misrepresentations is a question of fact best left for the jury. *Goodman v. Safeco Ins. of Ill.*, No. 8:13-cv-2641-T-30EAJ, 2014 U.S. Dist. LEXIS 138764, 2014 WL 5080247, at *3 (M.D. Fla. Sept. 30,

2014) (citing *Lopes v. Allstate Indem. Co.*, 873 So. 2d 344, 347 (Fla. 3d DCA 2004)). *Arch Specialty Ins. Co. v. Bp Inv.*, No. 6:18-cv-1149-Orl-78DCI, 2020 U.S. Dist. LEXIS 129107, at *7 (M.D. Fla. July 17, 2020). Scienter is "peculiarly" a jury issue; it deals with the choice of what to believe regarding a subjective state of mind seldom capable of direct proof. Clearly, making a choice as to what to believe has no place in summary judgment, particularly where "intent is virtually always a question for the jury." *Pinkerton & Laws Co. v. Roadway Express*, Inc., 650 F. Supp. 1138, 1148 (N.D. Ga. 1986). *GIW Indus. v. JerPeg Contracting, Inc.*, 530 F. Supp. 2d 1323, 1336-37 (S.D. Ga. 2008). Under Florida law, the elements of intent and materiality are generally factual questions for the jury. ("Under Florida law, the question of whether an insured made misrepresentations that are *material* is a question for the jury to determine."); *Fiveash v. Allstate Ins. Co.*, 603 F. App'x 773, 776 (11th Cir. 2015) ("The question of whether the insured acted with intent to deceive is a question for the jury."); *Lopes v. Allstate lndem. Lopes*, 873 So. 2d 344, 346-47 (Fla. 3d DCA 2004) ("The question of whether an insured has made a material misrepresentation is a question for the jury to determine"); *Haiman v. Fed. Ins.* Co., 798 So. 2d 811, 811-12 (Fla. 4th DCA 2001) ("Whether insured's statement constitutes a material misrepresentation which would void coverage should be determined by the trier of fact."). *Ruiz v. Safeco Ins. Co. of Ill.*, No. 18-21036-CIV-WILLIAMS, 2019 U.S. Dist. LEXIS 111881, at *7-8 (S.D. Fla. Mar. 18, 2019) At

the end of the day, this is a question of intent, which, because intent may be difficult to discern, often requires recourse to circumstantial evidence. *See Crawford v. Carroll*, 529 F.3d 961, 975-76 (11th Cir. 2008) (noting that a plaintiff may prove discriminatory intent under Title VII by direct or circumstantial evidence); *Denney v. City of Albany*, 247 F.3d 1172, 1182 (11th Cir. 2001) ("Disparate treatment claims require proof of discriminatory intent either through direct or circumstantial evidence.") (quoting *Joe's Stone Crab, Inc.*, 220 F.3d at 1286). "We are satisfied on this record that a jury could infer the necessary intent. Simply stated, this is a question for the jury." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 813 (11th Cir. 2010). A "deliberate intention to do wrong" is "the intent to cause the harm suffered by the plaintiffs." *Illusions of the S., Inc. v. City of Valdosta*, Civil Action No. 7:07-cv-6 (HL), 2009 U.S. Dist. LEXIS 62198, at *12 (M.D. Ga. July 21, 2009). Finally, "actual intent to cause injury" means "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." *Kidd v. Coates*, 271 Ga. 33, 518 S.E.2d 124 (1999) (internal quotation marks omitted). Intent may be established by circumstantial evidence or inferred from a party's actions. *In re Jennings*, 533 F.3d 1333, 1339 (11th Cir. 2008). *Nicholas v. Nationwide Credit, Inc.*, No. 09-60736-CIV, 2010 U.S. Dist. LEXIS 10442, at *13 (S.D. Fla. Feb. 8, 2010).

Whether such conduct is merely negligent or rises to the level of recklessness is an issue for the jury. *United States v. Freyre-Lazaro,* 3 F.3d 1496, 1503 (11th Cir. 1993), *cert. denied,* __ U.S. __, 114 S. Ct. 1385, __ L. Ed. 2d __ (1994); *Braswell v. ConAgra, Inc.,* 936 F.2d 1169, 1174 (11th Cir.1991); *United States v. Greer,* 850 F.2d 1447, 1452 n. 8 (11th Cir.1988).  *Speedway Grading Corp. v. Gardner,* 206 Ga. App. 439, 441, 425 S.E.2d 676, 678 (1992); *Elder v. Cardoso,* 205 Ga. App. 144, 147, 421 S.E.2d 753, 756 (1992); *King v. Masson,* 148 Ga. App. 229, 231, 251 S.E.2d 107, 108 (1978). *Hammer v. Slater*, 20 F.3d 1137, 1143 (11th Cir. 1994).

In this case, the Report & Recommendations and the Order adopting same make an impermissible fact finding of improper conduct at the summary judgment phase, but stripped the jury of considering the Defendant's state of mind, i.e. whether the acts at issue were done with specific intent to harm the Plaintiff-Appellee or whether Mr. Silverman did so negligently or even recklessly, which is critical fact finding to this case under Florida law as will be set forth below. *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008); *Seminole Boatyard, Inc. v. Christoph*, 715 So. 2d 987, 990 (Fla. 4th DCA 1998); *In re Hillsborough Holdings Corp.,* 176 B.R. 223, 244-45 (M.D. Fla. 1994).

c.    <u>Improper Conduct – What is required under Florida Law to Pierce the Corporate Veil?</u>

Mr. Silverman's testimony in his affidavit and accompanying accounting scorecard as well as the state of mind of the Defendant lead directly to the central

objection to the Report & Recommendations and Order adopting same– they do not consider whether a jury could find that Mr. Silverman's conduct was negligent or even reckless, rather than deliberately and intentionally done specifically to harm and/or defraud Sam's.

Instead, the Report & Recommendations merely states "(b)ased on the undisputed facts, any reasonable jury would conclude that Silverman improperly used WPP's corporate form." Doc 210, Pg. 11, Analysis, Section B.Doc 217, Page 7. But this is not the standard. And while the Report & Recommendations and Order adopting same make a finding that Mr. Silverman's actions simply constituted improper conduct, it fails to consider and distinguish the difference between negligent and/or reckless improper conduct on the one hand from intentional efforts to defraud Sam's on the other. Only the latter would permit piercing the corporate veil under Florida law as will be set forth below. Mr. Silverman contends that based on the record evidence, a genuine issue of material fact exists as to whether his actions were merely negligent ore reckless rather than intentionally designed to defraud Sam's and for this reason the objection should be sustained and the matter set for trial before jury so they can decide the mindset of the Defendant and whether the actions are sufficient to rise to the level of improper conduct under Florida's veil piercing laws.

Improper conduct under Florida's veil piercing law must be "deliberate misconduct" intentionally designed to harm Sam's – as the Court's note, even "negligence or even reckless conduct" -- improper as it may be -- is insufficient to rise to the level of the type of improper conduct required to pierce the corporate veil under Florida law; *In re Hillsborough Holdings Corp.,*176 B.R. 223, 244-45 (M.D. Fla. 1994) (citing Florida cases and holding that fraud and/or intentional wrongful conduct is required to pierce corporate veil because "negligent or reckless behavior does not constitute improper conduct"); also see *Robertson-Ceco Corp. v. Cornelius*, No. 3:03cv475/RV/EMT, 2007 U.S. Dist. LEXIS 23762, at *23-24 (N.D. Fla. Mar. 30, 2007), citing same.

Under Florida law, in order to pierce the corporate veil "it is not enough to show that the corporation's business affairs had been rather poorly handled" and even "loose and haphazard business practices" … "certainly would not justify" the piercing of the corporate veil without an affirmative showing that Defendant had engaged in intentional fraudulent acts to defraud the creditor.

"Negligent or reckless behavior *does not constitute improper conduct* sufficient to pierce the corporate veil." *Beach Cmty. Bank v. Cannon (In re Cannon)*, 27 Fla. L. Weekly Fed. B91 (U.S. Bankr. N.D. Fla 2017) (emphasis added).

On the record evidence before this Court, summary judgment is improper as a matter of law.  The Report & Recommendations do not touch upon the state of mind

of the Defendant related to the actions he took, does not consider the evidence in the record through that lens, and makes no finding (certainly not one that shows the record is devoid of evidence to the contrary) that Mr. Silverman's acts were intentionally performed to defraud Sam's as opposed to negligently or even recklessly. Such a finding is necessary in order to find improper conduct occurred in the context of how improper conduct is defined as a matter of Florida's veil piercing laws. Not only was this critical material fact left untouched in the Court's Orders, but also had it been analyzed it would have to lead to the conclusion that when viewing the evidence in a light most favorable to Mr. Silverman, a reasonable fact finder could conclude that he acted negligently or even recklessly, but not intentionally to deceive Sam's.

The facts advanced in the Silverman affidavit are specific enough to show that a genuine issue of material fact exists as to the fact issue of mental state and to whether his actions were negligent or reckless on the one hand or intentionally designed to defraud Sam's on the other. A reasonable fact finder could conclude that Mr. Silverman did not intend to defraud creditors when he used what he believed were his personal funds. The record facts create a fact issue regarding intent which a jury should be able to decide – did Mr. Silverman intentionally and deliberately defraud an existing creditor when he used what he believed were his own personal funds to pay his own personal expenses or did he negligently or even recklessly carry

out a decades' old business practice of leaving funds on account earmarked for himself personally and pay personal expenses from that account. As Courts have noted, poor handling of business affairs does not justify piercing the corporate veil. *Ally v. Naim*, 581 So. 2d 961, 962-63 (Fla. 3d DCA 1991). And neither does the commingling of business and personal assets and use of business monies to make personal purchases. *Flooring Depot FTL, Inc. v. Wurtzebach*, 330 So. 3d 47, 49-50 (Fla. 4th DCA 2021).[1] Florida courts require the improper conduct be ***deliberate*** misconduct designed to defraud a creditor and negligence or even reckless conduct are not sufficient to establish improper conduct under Florida law. *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 470 (Bankr. M.D. Fla. 1984).

Sam's must prove elements of causation and damages in order to pierce the corporate veil by showing that the fraudulent or misleading conduct *was intentionally directed at the Plaintiff*. *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008); *Seminole Boatyard, Inc. v. Christoph*, 715 So. 2d 987, 990 (Fla. 4th DCA 1998) (citing *Hillsborough Holdings*, 166 B.R. at 468-69); see

---

[1] Mr. Silverman further contends that *Flooring Depot FTL, Inc. v. Wurtzebach* does remain a good and applicable holding that would relieve him of personal liability and further that evidence remains over and above that in the record to show that funds were put into the account by Mr. Silverman personally so he could send from the corporate account after the May 2020 time frame and that there is no record evidence to support any finding that funds moved after May 2020 came from existing funds in the WP account, but rather were put there by Mr. Silverman himself to use the account to send money not to raid corporate assets to avoid payment as at Pg 16 of the Report and Recommendations, which makes an evidentiary leap and finding without any record evidence to support it.

also *U-Haul Intern., Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1043 (9th Cir. 1986) (reasoning that the alter ego theory under Sykes requires fraudulent or misleading conduct to be directed at the plaintiff*); In re Hillsborough Holdings Corp.*, 166 B.R. 461, 468-69. Finally, Sam's has not presented any evidence to show the timing of the payments from the accounts such that they can show causation of movement of funds against the dates when the payments were actually due Sam's, which would also be requisite to the issue of causation.

In fraud type cases, summary judgment "is rarely proper as the issue so frequently turns on the axis of the circumstances surrounding the complete transaction, including circumstantial evidence of intent and knowledge." *Coastal Investment Properties, Ltd. v. Weber Holdings, LLC*, 930 So. 2d 833, 834 (Fla. Dist. Ct. App. 2006) (quoting *Cohen v. Kravit Estate Buyers, Inc*., 843 So. 2d 989, 991 (Fla. Dist. Ct. App. 2003)); *see also Burton*, 556 So. 2d at 1129-30 ("Fraud is ordinarily inappropriate for summary disposition; only after a full explanation of the facts and circumstances can the occurrence of fraud be determined."). Intent and knowledge — may be, and often are, proven by circumstantial evidence. *See, e.g., Bacon & Bacon Mfg. Co. Inc. v. Bonsey Partn*ers, 62 So. 3d 1285 (Fla Dist. Ct. App. 2011); *Century Properties, Inc. v. Machtinger*, 448 So. 2d 570 (Fla. Dist. Ct. App. 1984).

Viewed in the light most favorable to plaintiff, there is sufficient evidence on the elements of whether there was actual intent and knowledge to specifically defraud the creditor Sam's West, Inc. for this case to proceed to trial to let the jury determine.   Viewing the evidence in the light most favorable to the plaintiff, as it must be on summary judgment, this Court should conclude that there are genuine issues of material fact as to whether Mr. Silverman acted in a negligent or even reckless manner on the one hand or if he acted with specific intent to defraud Sam's on the other.  On this record, with this evidence, dispositive determination cannot be determined at the summary judgment phase.

ii.    Amended Third Party Complaint fails to State a Claim

Before the District Court was Sam's West, Inc.'s ("Sam's") efforts to add Sydney Silverman, personally, as a judgment debtor to judgments the Appellee obtained against a corporate entity, W.P. Productions, Inc. To do this, Plaintiff-Appellee initially filed a one count Supplemental Complaint against Sydney Silverman personally in May 2021. Doc 140. The single count was a cause of action for collateral estoppel, asking this Court to import offensively the finding alter ego status made under California law in a separate action not involving Sam's to preclude all Silverman defenses and automatically add him as a judgment debtor, personally, to the judgments. Id., at ¶52-60. On June 16, 2021, Mr. Silverman answered the Complaint and asserted Affirmative Defenses. Doc 144. In his Affirmative Defenses,

Mr. Silverman defended that collateral estoppel was not a cause of action, that in any event it did not apply in this matter, and that a finding of alter ego was not legally sufficient under Florida law to pierce the corporate veil in Florida, so therefore Sam's failed to set forth a claim upon which relief could be granted, as there is no cause of action for alter ego in the State of Florida.

Plaintiff-Appellee Sam's was therefore on notice of this issue and fatal pleading defect as of June 16, 2021. The Court also set a Status Conference Regarding the proceedings for July 2, 2021. Doc 145. During the hearing after Mr. Silverman raised the issue of Florida law, the Court noted its concerns with the pleadings in the event the California collateral estoppel efforts failed, and graciously afforded Sam's the opportunity to amend its Complaint, despite no prior request made by Sam's. On July 16, 2021, Sam's took advantage of that warning from the Court and filed its Amended Third-Party Complaint. Doc 148. While Plaintiff-Appellee Sam's expanded its complaint from one count to two, it did not cure the pleading deficiency (it was on notice of) in its amended filing. *Id.* Instead, it brought two counts for declaratory relief – one to declare offensive collateral estoppel applied to enable a California holding to preclude Silverman from all defenses, and to automatically add Mr. Silverman as a judgment debtor and close the case, regardless of Florida law; and a second to seek declaratory relief finding merely that Mr. Silverman was, under Florida law, the alter-ego of W.P. Productions, Inc., without more – to wit: without

alleging or seeking any finding or relief required to pierce the corporate veil under Florida law which requires more than a mere finding of alter-ego, but also a finding of intentional fraud as well as causation, items which appear nowhere in the relief sought therein. *Id.*

Again, Mr. Silverman filed an Answer and Affirmative Defenses and again Mr. Silverman pled that the Plaintiff failed to state a claim upon which relief could be granted because alter-ego was an incomplete and therefore insufficient request for relief as a matter of law. Doc. 151. Despite being on repeated notice from Mr. Silverman as well as the Court, Sam's failed to request any opportunity to amend its deficient pleadings, leaving Count II, wholly insufficient to provide the relief needs in order to add Mr. Silverman, personally, as a judgment debtor. Then, the parties engaged in substantial briefing – per the schedule ordered by the Court – in order to handle the issue of collateral estoppel in Count I which alleged that Silverman was completely without the ability to defend himself from addition as a judgment debtor to the Sam's judgments. This briefing was made at Docs 149, 150, 152, 157, and 158. The Court scheduled and held a lengthy and substantive oral argument on October 14, 2021 Doc 163 and issued an order requiring supplemental briefing Doc 162 which was filed in this Court at Docs 166 and 169. The Court then issued its Report & Recommendations Doc 170 adopted over objection Doc 171 at Doc 172 on February 9, 2022. By this time, it was thoroughly clear that the relief sought in

the two-count complaint filed by Sam's was woefully inadequate to provide the relief required to pierce the corporate veil under Florida law against Mr. Silverman. In fact, the Court effectively granted the only relief at issue in this case, finding that "the California court clearly found that Judgment Debtor is an alter ego of Silverman," and as such due to the analysis therein (see Doc 170, Pg. 10-12), "Silverman should be prohibited from relitigating the issue of whether he 'dominated and controlled Judgment Debtor to such an extent that the corporation's independent existence, was in fact non-existent and Silverman was in fact the alter ego of the corporation.'". As such, by the Magistrate's December 15, 2021, Report & Recommendations, Doc 170, (adopted February 9, 2022, at Doc 172 by Judge Cohn), the issue of alter-ego was resolved, and Silverman was precluded from defending against the issue of alter-ego. The Report & Recommendations went further however, and instructed the parties that a determination of alter-ego was legally insufficient to pierce the corporate veil in Florida. This, again, was another clear warning to Sam's of the fatally insufficient nature of its pleadings as a matter of law as alter-ego is merely one simple element of several required to pierce the corporate veil in Florida. In essence, the Report & Recommendations was a roadmap for what was a legally sufficient pleading and prayer for relief in order to clear the high hurdle present under Florida law. Two weeks later, on February 23, 2022, following another hearing and status conference set by the Court (Doc 174), the Court issued another Scheduling

Order, affording Sam's yet another opportunity to amend its already Amended Complaint by April 8, 2022. Doc 177. Despite all the warning signals regarding its deficient pleadings, Sam's failed to do so. Mr. Silverman is entitled to summary judgment as a matter of law. The defense of failure to state a claim may be raised at summary judgment, see Wright & Miller, Federal Practice & Procedure § 1385 (3d ed. 2020). A party may not amend its complaint to end run summary judgment. The court must limit its review to the allegations set forth in the complaint. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *Ganstine v. Sec'y*, 502 F. App'x. 905, 909-10 (11th Cir. 2012) (holding that plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

The District Court held Mr. Silverman could not be automatically added as a judgment debtor to the Plaintiff-Appellee Sam's judgments due to the California ruling, so Count I was correctly resolved and not before the Court; and the Court already ruled that Mr. Silverman was the alter-ego of W.P. Productions, Inc., the first element required under Florida law, so Count II was effectively resolved, which

requested "Sam's Club respectfully requests that Silverman be added as a judgment debtor under Sam's Club's judgments in this action *as WPP's alter ego*." DE 148, ¶ 67 (emphasis added).

There were no other counts pled in the operative Amended Third Party Complaint, despite clear opportunity of Sam's to do so, and the relief sought therein simply did not allow Mr. Silverman to be added as a personal judgment debtor in this matter after the fact, in an effort by Plaintiff-Appellee to amend and plead around its own Amended Third-Party Complaint at the summary judgment phase. There were no allegations that Mr. Silverman used the corporate form to intentionally defraud Sam's and then caused specific injury to Sam's.

Nevertheless, the Magistrate Judge held Court accepted any and all facts – even as alleged – to be true, there is no relief that could be granted that would enable Sam's to pierce the corporate veil under Florida law and force Mr. Silverman to be added as a judgment debtor to the Sam's judgments. See DE 170, 172.

Silverman contends that Sam's Amended Complaint DE 148 is subject to dismissal under Fed. R. Civ. P. 12(b)(6). When a party seeks dismissal under Rule 12(b)(6), courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). "To survive a motion

to dismiss, however, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1210 (11th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The thrust of the lower court's analysis on this issue rests at Doc 210, Pg. 11, where the Court effectively held that while the Plaintiff-Appellee only made a claim for alter-ego, which is not the standard for piercing the corporate veil in Florida, it did enough to make out a claim by virtue of some allegations included in the Amended Third-Party Complaint.  But those allegations cited only allege facts that would go to the heart of the first element under Florida law, alter-ego, and not to the fact that Mr. Silverman intentionally acted to purposefully defraud Sam's West, Inc., and that those intentional actions caused Sam's injury.  In fact, the allegations are all conditioned.  For instance, all the allegations are designed to allege that the company was a "mere instrumentality" of Mr. Silverman because he commingled, failure to segregate and used corporate funds for his personal expenses, and therefore he was a mere alter-ego of his company.

However, alter-ego is just one of three elements required.  A review of the Amended Third Party Complaint contains no allegations that the behavior alleged to

39

be engaged by Mr. Silverman was intentionally designed to defraud Sam's West, Inc., and even if this Court accepted all the allegations as true in its Amended Third Party Complaint, the allegations and relief sought (i.e. for a finding and declaration that Mr. Silverman was the alter-ego of his company) fall short of reaching the level that could allow for the judgment entered in this case, which is a different finding enabling Plaintiff-Appellee to pierce the corporate veil. As such, the lower court's decision should be reversed, and summary judgment entered in favor of Mr. Silverman on account of his Motion for Summary Judgment. Doc 190.

## V. CONCLUSION

In awarding Summary Judgment, the Court accidentally and improperly conflated all possible improper corporate conduct (negligent, reckless, or intentional) into one group and held that because Florida law meant the funds in the account were the corporate funds and not Mr. Silverman's or that he failed to comply with Florida law upon dissolution that this automatically meant he was acting in a way that allowed Sam's to pierce the corporate veil. But in Florida, mere improper conduct is not enough. Where there is evidence that a party may have engaged in negligent or reckless improper conduct as opposed to intentional improper conduct deliberately designed to defraud the Plaintiff-Appellee, then the case should be submitted to a jury to make that state of mind determination. In this case, there are material facts that create a genuine issue as to the state of mind of Mr. Silverman

when engaged in those acts. His testimony, supported and corroborated by the scorecard/ledger, show that he did truly believe the funds were his personal funds and that he was not intentionally working to dupe Sam's but that he was engaged in a long-standing negligent or reckless business practice put in place well before the relationship with Sam's even commenced. On that record, it is improper to read into the record a state of mind determination where a reasonable juror could find his behavior was reckless, a finding that would protect and shield him from personal liability. On that singular issue alone, the case should be sent back to the District Court to hold a trial to allow a jury to determine the state of mind of Mr. Silverman at the material times.

Even though a corporation may not comply with Florida's laws in winding up a corporation which may be improper, when piercing the corporate veil to hold a person individually liable, the law still requires a fact finding as to whether those actions were made by a person negligently, recklessly, or intentionally. That additional layer of analysis that must be made before the veil is pierced and cannot be conflated into the duties of a company. In this particular case, it is clear that Mr. Silverman engaged in some sort of improper conduct when he advanced funds that he believed were due to him personally (supported by record evidence) and/or replenished funds in the corporate account to pay others, but it remains that a reasonable juror could find those actions negligent or even reckless, rather than

intentionally designed by Silverman to defraud Sam's West. It is that analysis, which was stripped from a jury, that should serve as the basis for reversal.

Finally, the Amended Third-Party Complaint fails to allege facts for which relief was granted in this case.

WHEREFORE, Appellant-Defendant Sydney I. Silverman respectfully requests this Court of Appeals grant him oral argument and ultimately reverse the findings of the District Court that resulted in the entry of Summary Judgment and Final Amended Judgments.

Dated: June 12, 2023                    Respectfully submitted,

**WAGNER LEGAL**
Attorney for Appellant Silverman
3050 Biscayne Blvd., #701
Miami, FL 33137
Telephone: (305) 768-9247
Facsimile: (305) 306-8598
By: /s/ Scott A. Wagner
Scott Wagner, Esq.
Florida Bar No. 10244
sw@WagnerLegalCo.com

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

This document complies with the word limit of FRAP 32(a)(7)(b) because, excluding the parts of the document exempted by FRAP 32(f), this document contains no more than 13,000 words.

This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

<u>/s/ Scott A. Wagner</u>
<u>Attorney for Appellant</u>
<u>Dated: June 12, 2023</u>

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 12th day of June, 2023, a true and correct copy of the foregoing Appellant's Initial Brief was duly served on Appellee's counsel(s) of record by electronic means and with the Clerk of the Court using CM/ECF. Notice and a copy of this filing will be sent by operation of the Court's CM/ECF system to Appellant's counsel(s).

**/s/ Scott A. Wagner**
Scott A. Wagner, Esq.